UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KWESI MUHAMMAD,<br><br>    Plaintiff,<br><br>    v.<br><br>STEPHAN MENDEZ,<br><br>    Defendant. | Case No. 23-cv-00789-AMO (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS AND REMANDING CASE STATE LAW CLAIMS TO STATE COURT**<br><br>Re: Dkt. No. 15 |

**I.  INTRODUCTION**

This is a federal civil rights action. Before the Court is the motion for summary judgment under Federal Rule of Civil Procedure 56 filed by Defendant Correctional Training Facility ("CTF") Officer Stephan Mendez on the grounds that: (1) Plaintiff Kwesi Muhammad fails to demonstrate federal law claims relating to First Amendment violations; (2) Muhammad's state law claims are not viable; and (3) Defendant is entitled to qualified immunity. Dkt. 15. Also before the Court is Defendant's request for judicial notice. Dkt. 15-7.

**II.  PROCEDURAL BACKGROUND**

On December 12, 2022, Muhammad filed this civil action in the Monterey County Superior Court, *Muhammad v. Mendez*, Case No. 22CV003851, stemming from alleged state and federal law violations relating to Defendant's failure to deliver Muhammad's legal mail, which caused him to miss a court deadline. Muhammad subsequently filed a First Amended Complaint ("FAC") in state court. Dkt. 3-1 at 2-35 (Def.'s Ex. A). In his FAC, Muhammad named the following CTF officials: Correctional Officer Mendez and "Doe Defendants 1 through 5." *Id.* at 1,

1   3.[1]  The FAC alleged federal law claims, two state law claims for a violation of Article 1 under the
2   California Constitution, a claim for a violation of California Penal Code § 2601, and a claim for
3   negligence.  *Id.*  Muhammad sought monetary and punitive damages.  *Id.* at 10.
4       On February 22, 2023, Defendant timely filed a notice of removal.  Dkt. 1.
5       This Order assumes familiarity with the Court's September 27, 2023 Order, which
6   provided the case's background and noted that, when liberally construed, Muhammad's
7   allegations in the FAC relating to Defendant's failure to deliver incoming legal mail and denial of
8   access to the courts appeared to state cognizable 42 U.S.C. § 1983 claims for violations of the
9   First Amendment.[2]  Dkt. 10 at 2-4.  The Court exercised supplemental jurisdiction over
10  Muhammad's state law claims relating to the actions of Defendant.  *Id.* at 5.  The Court dismissed
11  Muhammad's claim against "Doe Defendants 1 through 5" with leave to amend to provide
12  Muhammad one final opportunity to cure the deficiencies indicated in the Court's September 27,
13  2023 Order "within twenty-eight (28) days."  *Id.*  The Court warned Muhammad that the failure to
14  file a proper Second Amended Complaint ("SAC") within the designated time would result in the
15  following: "(1) the dismissal of Muhammad's claim against the Doe Defendants—'Doe
16  Defendants 1 through 5'; (2) the FAC (Dkt. 3-1) remaining the operative complaint; and (3) this
17  action proceeding in accordance with th[e] [September 27, 2023] Order."  *Id.*  The twenty-eight-
18  day deadline has long passed, and Muhammad has neither filed a SAC with an amended claim

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] Initially, in its September 27, 2023 Order, the Court noted that Muhammad's claims were based on the allegation that Defendant failed to deliver Muhammad's legal mail, which caused Muhammad to miss a court filing deadline in violation of "the First and Fourteenth Amendments to the United States Constitution."  Dkt. 10 at 2.  However, in reviewing the FAC, the Court found that Muhammad alleged cognizable First Amendment claims stemming from violations to his right to mail and access to the courts.  *Id.* at 2-3.  While the Court inadvertently stated in its conclusion that "Muhammad's allegations relating to Defendant Mendez's failure to deliver incoming legal mail and denial of access to the courts appear to state cognizable § 1983 claims for violations of the First and Fourteenth Amendments," *see id.* at 5, the Court now clarifies that the only cognizable claim found in the body of its order of service was based on the *First Amendment*, *see id.* at 2-3.  Thus, any Fourteenth Amendment claims that the Court inadvertently found to be cognizable are **DISMISSED,** and the only remaining federal claims are Muhammad's First Amendment claims stemming from violations to Muhammad's right to mail and access to the courts.  *See id.*

United States District Court
Northern District of California

1  against the Doe Defendants nor sought an extension of time to do so.  Accordingly, the Court rules
2  that: (1) all claims against the Doe Defendants—"Doe Defendants 1 through 5"—are
3  **DISMISSED**; (2) the FAC (Dkt. 3-1) remains the operative complaint; and (3) this action should
4  proceed in accordance with the Court's September 27, 2023 Order.
5        As mentioned, Defendant now moves for summary judgment as to Muhammad's federal
6  and state law claims in the FAC on the grounds that there are no material dispute of facts and that
7  Defendant is entitled to judgment as a matter of law.  Dkt. 15.  Defendant also asserts that he is
8  entitled to qualified immunity.  *See id.*  Muhammad filed an opposition to which Defendant filed a
9  reply.  Dkts. 18-22, 24.  Defendant has also filed a request for judicial notice.  Dkt. 15-7.

10  **III.    DISCUSSION**

11      **A.    Defendant's Request for Judicial Notice**

12        Defendant has filed a request for the Court to take judicial notice of the following two
13  exhibits:

> Exhibit A: True and correct copies of court records relating to *Muhammad v. Barber*, E.D. Cal. No. 2:19-cv-02592: (1) the court docket; (2) findings and recommendations, dated September 22, 2020; and (3) order dated October 26, 2020.
>
> Exhibit B: True and correct copies of court records relating to *Muhammad v. Barber*, Ninth Cir. No. 20-17346: (1) the court docket and (2) order dated September 22, 2021.

18  Dkt. 15-7 at 2.  Defendant's request is **GRANTED** because the district court "may take notice of
19  proceedings in other courts, both within and without the federal judicial system, if those
20  proceedings have a direct relation to matters at issue."  *Bias v. Moynihan*, 508 F.3d 1212, 1225
21  (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial
22  notice in section 1983 action of five prior cases, in which plaintiff was litigant who was
23  representing herself).

24      **B.    Defendant's Motion for Summary Judgment**

25          **1.    Factual Background on Muhammad's First Amendment Claims**

26              **a.    Muhammad's Version**

27        In November 2020, Muhammad filed a notice of appeal in a separate action he had filed in
28  the United States District Court for the Eastern District of California, *Muhammad v. Barber*, Case

(Left margin: United States District Court / Northern District of California)

No. 2:19-cv-02592-TLN-EFB. Dkt. 3-1 at 4. The Ninth Circuit Court of Appeals denied Muhammad's appeal on or around September 22, 2021, and he subsequently filed a petition for rehearing en banc on or around October 5, 2021. *Id.*

On or about April 4, 2022, Muhammad was informed by a CTF law library clerk that he could access the Ninth Circuit's docket on the CTF law library computers. Dkt. 21 at 2. Muhammad claims that he did not know that he could remotely access court dockets prior to this date. *Id.* Muhammad used a computer in the library to check the status of his appeal and discovered that his petition had been denied on December 8, 2021. *Id.* He claims that he had not received any notice of this. *Id.* Thereafter, Muhammad requested a copy of the Ninth Circuit order denying his petition for rehearing en banc, which he received on April 13, 2022. *Id.*

According to Muhammad's incoming legal mail log, the CTF mailroom received two pieces of confidential legal mail addressed to him on December 31, 2021: a letter from the Monterey County Superior Court and a letter from the Ninth Circuit. Dkt. 3-1 at 4. The general CTF mailroom attendant logged both pieces of mail in the mailroom's incoming legal mail logbook. *Id.* However, only the letter from the Monterey County Superior Court was logged in the legal mail logbook for Muhammad's housing unit, the F-Wing. *Id.*

Muhammad claims that Defendant was assigned to the F-Wing unit on December 31, 2021, and was responsible for issuing Muhammad his confidential mail. *Id.* One of Defendant's duties while working in the F-Wing was to deliver legal mail to inmates. *Id.* Defendant issued Muhammad his mail from the Monterey County Superior Court, and Muhammad subsequently signed the F-Wing's legal mail logbook as required pursuant to departmental regulation. *Id.* at 4-5. However, Defendant did not issue, nor did Muhammad sign for, any piece of mail from the Ninth Circuit on December 31, 2021. *Id.* at 5.

Because of the nearly four-month delay in obtaining the Ninth Circuit order denying Muhammad's petition for rehearing en banc, Muhammad alleges that he missed his ninety-day deadline to file a writ of certiorari in the United States Supreme Court. *Id.*

**2.     Defendant's Version**

Incoming mail at CTF is initially sorted and logged by the facility's mailroom staff. Lopez

Decl. ¶ 3.  Letters categorized as legal mail, which include letters from the courts and those with an identifiable attorney's name, are separately bundled from the non-legal mail.  *Id.*  When an item is categorized as legal mail, the mailroom staff logs each piece of legal mail with the sender's information, the date it was received, and the inmate's CDC identification number and housing unit.  *Id.* ¶ 4.  The legal mail is then dropped off at the various housing units.  *Id.* ¶ 5.  The building officer working in each unit receives and signs for the legal mail. The building officer then separately logs certain information about each piece of legal mail into the housing unit's legal mail log, including the sender's name, the inmate's name, and the inmate's cell number.  *Id.*  Before giving the inmate the legal mail, the officer asks the inmate to sign the legal mail log.  *Id.*

Here, Defendant asserts that he has no recollection of whether he was the staff member who received and logged the legal mail for the F-Wing on December 31, 2021.  Mendez Decl. ¶ 5. Defendant also claims to have no recollection of whether he was the CTF staff member who personally delivered Muhammad's legal mail on that date.  *Id.*  Defendant further asserts that he does not recognize the handwriting in the F-wing logbook as his own.  *Id.*

Defendant claims that, assuming he was the F-Wing officer responsible for mail on December 31, 2021, he would have delivered any mail he received in accordance with mailroom procedure.  *Id.*  Any deviation from procedure on December 31, 2021 would have been an inadvertent mistake or simple oversight on his part.  *Id.*  Defendant contends that he did not intentionally withhold Muhammad's legal mail on this date or any other date.  *Id.* ¶ 6.

## IV.  DISCUSSION

### A.  Motion for Summary Judgment as to Federal Claims

#### 1.  Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

5

317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the court's task to scour the record in search of a genuine issue of triable fact. *Id*. If the nonmoving party fails to make the requisite showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendant has presented declarations and supporting exhibits from the following: his attorney Deputy Attorney General Hannah Park, Esq., CTF Mail Room Supervisor and Office Services Supervisor II C. Lopez, and himself. Dkts. 15-1 – 15-6. Meanwhile, Muhammad has filed his verified complaint and declaration, as well as attached exhibits. *See* Dkt. 3-1 at 10; Dkt. 21 at 5. The Court will construe these filings as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, Muhammad has not verified his opposition because he failed to sign it under penalty of perjury.[3] Dkt. 18 at 17.

As mentioned above, Defendant seeks summary judgment on the following grounds: (1) Muhammad failed to demonstrate First Amendment violations; (2) Muhammad's state law

---

[3] The Court notes that even if it considered the allegations in Muhammad's opposition to the extent such allegations are based on his personal knowledge and set forth specific facts admissible in evidence, *see Schroeder*, 55 F.3d at 460 & nn.10-11, the result would not change. Muhammad's opposition contains allegations similar to those in his verified declaration. *Compare* Dkt. 18 *to* Dkt. 21.

6

claims are not viable; and (3) Defendant is entitled to qualified immunity.  Dkt. 15.

For the reasons outlined below, the Court **GRANTS** in part Defendant's motion for summary judgment as to the federal claims and **REMANDS** the remaining state law claims to state court.  Ultimately, because the Court concludes that the Defendant is entitled to summary judgment on Muhammad's First Amendment claims, it does not address whether he is entitled to qualified immunity.

### 2.  First Amendment Right to Mail Claim

Prisoners enjoy a First Amendment right to send and receive mail, *see Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)), and prison officials have a responsibility to forward mail to inmates promptly.  *See Bryan v. Werner*, 516 F.2d 233, 238 (3d Cir. 1975).  Any practice or regulation that unduly delays an inmate's incoming mail must be reasonably related to legitimate penological interests.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  But a temporary delay or isolated incident of delay does not violate a prisoner's First Amendment rights.  *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (policy of diverting publications through property room reasonably related to prison's interest in inspecting mail for contraband); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974), *cert. denied*, 418 U.S. 910 (1974).  Isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation.  *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Bach*, 504 F.2d at 1102.  A claim for negligent mishandling or misdirection of mail is also not actionable under section 1983.  *Rhinehart v. Gomez*, 205 F.3d 1352, 1352 n.3 (9th Cir. 1999) (unpublished table decision) (citing *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986)).

Here, Muhammad alleges that on one occasion, Defendant failed to deliver legal mail to him in the F-Wing unit.  *See* Dkts. 3-1, 21.  Muhammad does not suggest that this mishandling was anything but an isolated incident, and there is no evidence of improper motive.  *Id.* Muhammad has not alleged any other instances of Defendant failing to deliver his legal mail.  *Id.* He affirmatively describes Defendant's conduct on this particular day as "negligent acts," rather than as part of an ongoing, purposeful pattern of conduct.  Dkt. 3-1 at 9.  Further, Muhammad has

7

1  not provided evidence that his legal mail was intentionally withheld from him.  *See id.* at 4-5; *see*
2  *also* Dkt. 21 at 3-4.  Muhammad claims that he "believe[s] the Defendant deliberately withheld
3  [his] mail from the Ninth Circuit on December 31, 2021, and did so in the absence of a legitimate
4  purpose."  Dkt. 21 at 3.  However, Muhammad does not support his conclusory statement with any
5  evidence that Defendant's actions were deliberate.  *See id.*  Muhammad's unsupported speculation
6  about Defendant's mental state does not create a triable issue of fact.  *See Carmen v. San*
7  *Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (holding that plaintiff's belief
8  that defendant acted with an unlawful motive, without supporting evidence, is not cognizable
9  evidence on summary judgment.)

10  The parties agree that Defendant did not regularly work in Muhammad's housing unit.
11  Mendez Decl. ¶ 2; Muhammad's Dep. (Park Decl., Ex. A) 14:2-6.  Muhammad acknowledged at
12  his deposition that he only had this single encounter with Defendant, and this was the first time his
13  legal mail was not delivered at CTF.  *See* Muhammad's Dep. at 11:19-12:5; 14:4-6; 15:18-20.
14  Thus, no evidence exists in the record showing that Defendant had any reason or motive to
15  intentionally withhold Muhammad's mail.
16  At best, Muhammad has established that CTF staff did not follow policies for delivering a
17  single piece of legal mail, but there is no evidence that would allow a jury to reasonably infer that
18  Defendant deliberately withheld it because of an improper motive.  *See Bach*, 504 F.2d at 1102
19  (concluding that an isolated incident of mail mishandling was insufficient to state a claim under
20  First Amendment).  At most, Muhammad's claim amounts to negligent mishandling of mail,
21  which is also not actionable under 1983.  *See Rhinehart*, 205 F.3d at 1352 n.3.
22  Accordingly, the Defendant is entitled to summary judgment under Rule 56, and the Court
23  **GRANTS** his motion for summary judgment as to the First Amendment right to mail claim
24  against him.

25          **3.**    **First Amendment Right to Access to the Courts Claim**
26  Prisoners have a constitutional right of access to the courts.  *See Lewis v. Casey*, 518 U.S.
27
28

8

1   343, 350 (1996).[4]  This right applies to prisoners' challenges to their convictions or sentences or

2   conditions of confinement. *Id.* at 355. Prison officials may not "actively interfer[e] with inmates'

3   attempts to prepare legal documents or file them." *Id.* at 350 (citations omitted).

4         The deliberate delay of legal mail which adversely affects legal proceedings presents a

5   cognizable claim. *See Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986). To establish a

6   claim for any violation of the right of access to the courts, the prisoner must prove that there was

7   an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*,

8   518 U.S. at 349-51. To prove an actual injury, the prisoner must show that the inadequacy in the

9   prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or

10  conditions of confinement. *See id.* at 350-55. The prisoner must describe the underlying non-

11  frivolous claim well enough to show that "the 'arguable' nature of the underlying claim is more

12  than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (footnote omitted).

13        Once the prisoner establishes a denial of access to the courts, the court should then

14  determine whether the hindrance of the prisoner's access to court was reasonably related to

15  legitimate penological interests. *See id.* at 361 (citing *Turner*, 482 U.S. at 89). If the hindrance

16  passes the *Turner* test, the denial of access to the courts claim will fail even if there was actual

17  injury.

18        Muhammad alleges that Defendant's failure to deliver legal mail from the Ninth Circuit

19  prevented him from timely filing a petition for writ of certiorari for his underlying claim with the

20  Supreme Court. *See* Dkts. 3-1, 21. However, Muhammad fails to identify actual injury by

21  showing that his efforts to pursue a non-frivolous claim has been hindered. *See Lewis*, 518 U.S. at

---

[4] The constitutional source of the right of access to the courts is not settled. *See Christopher v. Harbury*, 536 U.S. 403, 413-14 & 415 n.12 (2002); *Lewis v. Casey*, 518 U.S. 343, 366-67 (1996) (Thomas, J., concurring). Supreme Court decisions have grounded the right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *Christopher*, 536 U.S. at 415 n.12 (citing cases). The Ninth Circuit also has found various constitutional sources for the right. *See, e.g., Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (finding right of access to courts in non-prisoner case subsumed under First Amendment). In this matter, the Court has found that Muhammad has stated a cognizable *First* Amendment claim of a violation of his right of access to the courts. *See* Dkt. 10 at 3.

350-55. Moreover, he has not shown that his inability to file the petition was directly caused by the isolated incident of alleged mail mishandling.

Muhammad has not demonstrated that he had an arguable, nonfrivolous claim to present to the Supreme Court. In the civil case Muhammad states he was attempting to pursue—*Muhammad v. Barber*, case no. 2:19-cv-2592—the United States District Court for the Eastern District dismissed Muhammad's claim three times on screening for failure to state the elements of a claim for deliberate indifference and intentional infliction of emotional distress. *See* Dkt. 15-7. After each dismissal, Muhammad was given an opportunity to amend. *Id.* After finding the same deficiencies in each complaint, the Eastern District judge determined that further leave to amend would be futile and dismissed the case. *Id.* Muhammad appealed the dismissal to the Ninth Circuit, which concluded that the district court properly dismissed his claims for failure to state a claim. *Id.* There is no indication that Muhammad would have presented an argument to the Supreme Court that would have overcome the deficiencies previously found by the lower courts. Moreover, Muhammad conceded in his deposition that he would have reiterated the same argument that he made in the District Court and Ninth Circuit. Muhammad Dep. at 22:9-19.

Additionally, Muhammad has not demonstrated that his injury was proximately caused by Defendant. The fact that Muhammad did not receive his legal mail from the Ninth Circuit, alone, is insufficient to establish a causal link between Defendant's actions and Muhammad's inability to pursue his lawsuit. Muhammad's allegations of possible negligence on a single occasion do not demonstrate that Defendant was actively interfering with his attempts to litigate or that Defendant was the cause of his inability to pursue his claims. As a practical matter, Muhammad does not allege that he was denied all access to the legal system prior to the Supreme Court deadline. There is no indication that Muhammad was precluded from litigating his lawsuit during the ninety-day period from December 31, 2021 in which he was required file a petition for a writ of certiorari. Muhammad does not allege that he attempted to contact the Ninth Circuit during that timeframe to learn if his petition for rehearing was received, filed, or rejected. Muhammad concedes that he had access to the law library and could have discovered the deadline by means other than physically receiving the actual letter from the Ninth Circuit. Muhammad Dep. at 25:11-26:4.

1   Muhammad continued to have access to the law library, where he could have checked on the
2   status of his cases, and to the mail system, where he could have corresponded with the courts.
3   Thus, such access belies Muhammad's claim that he was precluded from pursuing the underlying
4   action solely because he did not receive his legal mail from the Ninth Circuit.[5] Therefore,
5   Muhammad has failed to show an actual injury or hindrance in his access to the courts, as required
6   by *Lewis v. Casey*. *See Lewis*, 518 U.S. at 350-55. Defendant is therefore entitled to summary
7   judgment on this claim.

\* \* \*

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Muhammad's First Amendment claims against him. *See Celotex Corp.*, 477 U.S. at 323. Muhammad has failed to respond and point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to the aforementioned federal law claims.[6] Dkt. 15.

### B. Motion for Summary Judgment as to State Law Claims

Defendant has also filed a motion for summary judgment as to the remaining claims, which are based on state law. Dkt. 15 at 17-19. However, the Court declines to exercise supplemental jurisdiction over any remaining state law claims now that the federal question claim has been dismissed. *See* 28 U.S.C. § 1367(c)(3). Therefore, this case will be remanded to state court. *See Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir. 1986) ("it is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand

---

[5] In his declaration, Muhammad states that he was not aware that he could use the CTF law library to view court dockets until April 4, 2022—almost four months after his mail was allegedly withheld on December 31, 2021. Dkt. 21 at 2. However, Muhammad does not claim that he was *prevented* from inquiring about accessing the docket prior to April 2022. *See id.* Instead, it was his *delay* in approaching law library staff that prevented him from having access to the docket prior to that date.

[6] Defendant has also asserted a qualified immunity defense. Dkt. 15 at 16-17. Because the Court has found that Muhammad's First Amendment claims fail on the merits, the question of qualified immunity need not be reached.

it to the state court from which it was removed"); *Plute v. Roadway Package System, Inc.,* 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (court may remand on its own motion or on the motion of a party).

Accordingly, Muhammad's state law claims are **REMANDED**.

## V.     CONCLUSION

For the foregoing reasons, the Court orders:

1. All claims against the Doe Defendants—"Doe Defendants 1 through 5"--are **DISMISSED** and the FAC (Dkt. 3-1) remains the operative complaint in this action. *See supra* PROCEDURAL BACKGROUND. Also, any Fourteenth Amendment claims that the Court inadvertently found to be cognizable are **DISMISSED**. *See id.* at fn. 2.

2. The Court **GRANTS** Defendant's request for judicial notice as to Exhibits A&B. Dkt. 15-7.

3. The Court **GRANTS** in part Defendant's motion for summary judgment (Dkt. 15) as to the First Amendment (federal law) claims.

4. The Court **REMANDS** the remaining state law claims to state court.

5. The Clerk of the Court **SHALL** transmit the file to the Monterey County Superior Court and close the file in this Court.

6. This Order terminates Docket No. 15.

**IT IS SO ORDERED.**

Dated:  September 24, 2024

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**